IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN RE: CAPITAL ONE CONSUMER          )
DATA SECURITY BREACH LITIGATION      )          MDL No. 1:19-md-2915 (AJT/JFA)
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾  )

**This Document Relates to the Consumer Cases**

## <u>ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

This matter came before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Approval Motion").[1] The Court held a hearing on the Final Approval Motion on September 8, 2022, following which  the Court finally approved the Class Action Settlement, and in memorialization of that approval, issues this Order and Judgment Granting Final Approval of Class Action.[2]

## <u>BACKGROUND</u>

On July 29, 2019, Capital One announced that the sensitive personal information of approximately 98 million Americans who had applied for Capital One credit cards had been stolen by a malicious criminal hacker from Amazon's AWS cloud where Capital One stored this information (the "Data Breach"). Affected individuals across the country began filing class action lawsuits against Capital One and Amazon. Ultimately, more than 60 such lawsuits were filed. In October 2019, the Judicial Panel on Multidistrict Litigation consolidated and transferred these lawsuits to this Court for pre-trial proceedings (the "Action").

On December 2, 2019, the Court appointed Norman E. Siegel, Karen Hanson Riebel, and

---

[1] Plaintiffs have also filed their Unopposed Motion for an Award of Attorneys' Fees, Costs and Expenses, and for Plaintiff Service Awards, Docs. 2230, 2231, which the Court took under advisement following the hearing on September 8, 2022.

[2] All capitalized terms not otherwise defined have the meanings set forth in the Settlement Agreement. Doc. 2219-1 ("Settlement").

John Yanchunis as Plaintiffs' Lead Counsel and Steven Webster as Local Counsel. Doc. 210, Pretrial Order #3. On January 29, 2020, the Court approved a representative complaint as the vehicle for litigating Plaintiffs' claims (Doc. 302), which the Plaintiffs filed on March 2, 2020 (the "Representative Complaint"). The 91-page Representative Complaint named Representative Plaintiffs from the states of California, Florida, New York, Texas, Virginia, and Washington, asserting representative common law claims on behalf of a nationwide class against Capital One and Amazon for negligence, negligence *per se*, unjust enrichment, breach of express and implied contract, and declaratory judgment, and state statutory claims under state data breach notification and consumer protection statutes on behalf of state subclasses. Doc. 332, Doc. 354 (corrected).[3]

On April 10, 2020, Capital One and Amazon each filed motions to dismiss the Representative Complaint in its entirety. Docs. 386-87, 389-90. Plaintiffs filed opposition briefs to which Defendants replied. *See* Docs. 426, 427 (Plaintiffs' Memoranda in Opposition); Docs. 463, 464 (Defendants' Replies). On May 27, 2020, the Court heard oral argument on Defendants' motions to dismiss. *See* Doc. 494. Those motions were granted in part and denied in part.

On September 18, 2020, the Court issued a ruling granting in part and otherwise denying the motions. Doc. 879. However, briefing related to Representative Plaintiffs' allegations continued for months thereafter. On October 2, 2020, Capital One asked the Court to reconsider one of its rulings—that the Representative Plaintiffs had sufficiently alleged Capital One assumed a duty of care to them in tort under Virginia law, and alternatively asked the Court to certify this question to the Virginia Supreme Court. Doc. 916. Plaintiffs submitted opposition briefing, and the Court denied the motion for reconsideration. Doc. 934 (Plaintiffs' Opposition); Doc. 951

---

[3] Three of the Representative Plaintiffs voluntarily dismissed their claims without prejudice to their ability to submit claims as absent class members (Docs. 399, 436, 852) and two new Representative Plaintiffs were substituted, ultimately resulting in the eight current Representative Plaintiffs who are the Settlement Class Representatives under the settlement. Doc. 971 (Second Amended Representative Complaint).

(Joinder by Amazon); Doc. 965 (Capital One's Reply); Doc. 1059 (Order denying). Later, after concluding Virginia law applied as to all Representative Plaintiffs' common law claims (Doc. 1293; Doc. 879 at 9), the Court granted Capital One's request to certify the question of tort duty to the Virginia Supreme Court. Doc. 1291. The Virginia Supreme Court subsequently declined to accept the certified question. Doc. 1380.

On October 16, 2020, Defendants each filed Answers. Docs. 953, 955. On October 30, 2020, Capital One moved for judgment on the pleadings on Representative Plaintiffs' unjust enrichment and implied contract claims (Doc. 996), which Plaintiffs opposed. Doc. 1032 (Plaintiffs' Opposition); Doc. 1060 (Capital One's Reply). After a hearing, the Court denied the motion. Doc. 1096 (12/09/2020 Hr'g Tr.); Doc. 1290 (Order denying).

Meanwhile, as motion practice related to Representative Plaintiffs' allegations was underway, the Parties were engaged in discovery. Plaintiffs served several rounds of written discovery on Defendants and eighteen third-party subpoenas, including six subpoenas to former Capital One employees, and reviewed over 350,000 documents—totaling nearly 3 million pages— produced by Defendants and nearly 7,500 documents produced by third parties. *See* Doc. 2219-4, Class Counsel Decl. ¶ 20. Plaintiffs also took 33 depositions of Defendants' fact witnesses, 13 depositions of Defendants' Rule 30(b)(6) witnesses, and two third-party depositions. *Id.* In addition, Defendants also served written discovery requests on the Plaintiffs, requiring searches of Plaintiffs' electronic documents in addition to the collection and review of physical documents. Plaintiffs ultimately produced nearly 1,750 documents totaling over 7,500 pages in 54 document productions after collecting and reviewing over 145,000 documents from 24 custodians. *Id.* ¶ 21.

Furthermore, discovery involved the completion and collection of a verified "Fact Sheet," including ten pages of questions and eight document requests, to MDL Plaintiffs. Ultimately, 101 MDL Plaintiffs submitted verified Fact Sheets and responsive documents, while 147 MDL

Plaintiffs chose to dismiss their pending complaints.[4] *Id.* In May 2020, each of the Representative Plaintiffs sat for remote depositions. *Id.* ¶ 22. In addition, Defendants deposed nine additional MDL Plaintiffs. All of this discovery involved significant motion practice before Judge Anderson. After discovery closed in late 2020 and expert disclosures were completed in the spring of 2021, on April 28, 2021, Plaintiffs filed their Motion for Class Certification, seeking certification of a nationwide class of approximately 98 million Americans. Docs. 1259, 1261. This motion was fully briefed on June 18, 2021. *See* Doc. 1443 (Capital One's Opposition); Doc. 1435 (Amazon's Opposition); Doc. 1558 (Plaintiffs' Reply as to Capital One); Doc. 1571 (Plaintiffs' Reply as to Amazon).

Defendants each filed several *Daubert* challenges related to Plaintiffs' class certification motion, which Plaintiffs opposed, and which were fully briefed by July 2, 2021. Docs. 1389, 1390, 1394, 1395, 1397, 1398, 1427, 1428, 1431, 1432 (Defendants' motions to exclude and memoranda in support); Docs. 1528, 1534, 1540, 1546, 1552 (Plaintiffs' Oppositions); Docs. 1607, 1609, 1611, 1633, 1647 (Defendants' Replies). Plaintiffs also moved to exclude one of Capital One's experts related to Plaintiffs' Motion for Class Certification. Docs. 1559-60.

The Court held a two-day hearing on July 12 and 13, 2021 on Plaintiffs' Motion for Class Certification, the various related *Daubert* challenges, and Capital One's challenge to the Court's jurisdiction to adjudicate Representative Plaintiffs' tort and statutory claims. Docs. 1745, 1747; Docs. 1901-1902 (7/12-13/21 Hr'g Tr.). Soon thereafter, briefing on dispositive motions commenced. On June 3, 2021, Capital One filed its motion for summary judgment seeking judgment on each of Representative Plaintiffs' claims on several bases. Docs. 1460, 1463. That motion was fully briefed. Doc. 1807.

---

[4] Of the 101 MDL Plaintiffs who submitted verified Fact Sheets and documents, an additional 32 eventually chose to dismiss their pending complaints.

On July 2, 2021, the Representative Plaintiffs moved for partial summary judgment on their claims for breach of express and implied contract against Capital One. Docs. 1646, 1649. That motion was fully briefed. On the same day, Amazon moved for summary judgment on each of Representative Plaintiffs' claims. Docs. 1678, 1693. That motion was fully briefed. Doc. 1820. Capital One and Amazon also filed additional *Daubert* motions in connection with summary judgment, which Plaintiffs opposed. Docs. 1658, 1674, 1828, 1840. Plaintiffs filed a motion to exclude the testimony of one of Capital One's experts related to summary judgment. Docs. 1638, 1640. These *Daubert* motions were fully briefed on August 23, 2021.

On September 30, 2021, the Court held a full-day summary judgment hearing, including additional argument on Capital One's jurisdictional challenge. Doc. 2027 (9/30/21 Hr'g Tr.). At the time of settlement, the motions for class certification, summary judgment, to exclude expert testimony, and to challenge Plaintiffs' Article III standing were submitted to the Court and under advisement.

Parallel to their litigation of the Actions, the Parties engaged in settlement negotiations beginning in March 2020. The negotiations were first overseen by former United States District Court Judge Layn R. Phillips and later overseen by United States District Judge Leonie M. Brinkema. The Parties engaged in four mediation sessions, on March 21, 2020, November 18, 2020, April 16, 2021, and August 3, 2021, with Judge Brinkema presiding over the last three conferences. On December 17, 2021, the Parties executed a binding term sheet, to be superseded by the Settlement Agreement. Doc. 2219-4, Class Counsel's Declaration ¶ 30. The Parties signed the Settlement Agreement on January 31, 2022. Dkt. 2219-1.

On February 7, 2022, the Court granted Plaintiffs' Motion for Preliminary Approval and to Direct Notice. In its order (Doc. 2220), the Court found at that time that the Settlement terms negotiated by the Parties appeared fair, reasonable, and adequate under Rule 23(e) and that the

Class Representatives and Class Counsel have adequately represented the Class. Accordingly, the Court held that it would likely be able to certify the proposed Settlement Class under Rule 23(b)(3) and directed the Parties to issue notice to putative class members. Pursuant to the Court's direction, the Claims Administrator appointed by the Court implemented a robust notice program, and the claims process is ongoing.

In accordance with the Court's order, direct mail and email notice to Class Members was served. The notice informed Class Members of the terms of the Settlement, including instructions for submitting a claim for cash reimbursement for out-of-pocket losses and time spent addressing issues related to the Data Breach. The notice further informed Class Members of the deadline to submit an objection to the Settlement or to opt out from the Settlement and that Class Counsel would seek attorneys' fees of up to 35% of the Settlement Fund, reimbursement for costs and expenses, and service awards of $5,000 for each of the Named Plaintiffs. The Notice Plan has been successfully implemented and reached approximately 96 percent of the Settlement Class by the individual notice efforts alone. Azari Decl., Ex. 1 to memorandum in support, ¶¶ 8-23, 40. Targeted internet advertising and extensive news coverage enhanced public awareness of the Settlement. Azari Decl. ¶¶ 24-29, 40.

After completion of the ordered class notice, hundreds of thousands of Settlement Class Members filed claims, and Class Counsel expects that every Class Member submitting a valid, Out-Of-Pocket Loss claim will be completely (or nearly completely) reimbursed for losses that the Class Member believes are fairly traceable to the Data Breach. Conversely, only 4 Class Members submitted substantive objections—or just .000004% of the class.[5]

---

[5] Class Counsel have applied separately for a fee of 33.3% of the Settlement Fund, or $63,270,000, and reimbursement of litigation expenses of $2,345,821.98. *See generally* Docs. 2230, 2231 and Class Counsel Supplemental Decl., Ex. 4 to memorandum in support, ¶¶ 5-6. Class Counsel have also requested service awards of $5,000 each for the eight Settlement Class Representatives and the nine other MDL Plaintiffs who were deposed by Capital One. (*Id.*) Capital One takes no position on these requests.

## FINAL APPROVAL AND JUDGMENT

Nothing has occurred that would alter the Court's initial determination that the Settlement is fair, reasonable, and adequate. In fact, the response of the class members to the Settlement further underscores that the Settlement is, in fact, fair, reasonable, and adequate. Therefore, the Court, having reviewed the Settlement Agreement and Release, including the exhibits attached thereto (together, the "Settlement Agreement" or "Settlement"), the arguments and authorities presented by the Parties and their counsel, and the record in the Action, and good cause appearing, hereby grants final approval of the Settlement.

Accordingly,

**IT IS HEREBY ORDERED**:

1.    **Class Certification for Settlement Purposes Only**.

The Settlement Agreement provides for a Settlement Class defined as follows:

The approximately 98 million U.S. residents identified by Capital One whose information was compromised in the Data Breach that Capital One announced on July 29, 2019, as reflected in the Class List.

Excluded from the Settlement Class are (i) Capital One, any entity in which Capital One has a controlling interest, and Capital One's officers, directors, legal representatives, Successors, Subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opted out of the Settlement Class. Doc. 2219-1, § 2.39.

For the following reasons, the Court affirms that it is proper to certify, and hereby does finally certify, for settlement purposes only, the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3).

a.    ***Numerosity***: Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, there

are approximately 98 million Settlement Class Members and numerosity is not in question. *See Jeffreys v. Commc'ns Workers of Am., AFL–CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

      **b.**    **Commonality**: Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," such that "all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal quotations and citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "Even a single common question will do." *Id.* at 359 (internal quotations omitted). Here, all Settlement Class Members suffered the same alleged injury from the same conduct—exposure of their personal data in the Data Breach—and are asserting the same legal claims. Accordingly, common questions of law and fact abound. *See, e.g.*, *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *11-12 (N.D. Ga. March 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), and *cert. denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 307-09 (N.D. Cal. 2018).

      *c.*    **Typicality**: Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke*

*Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (internal quotations and citations omitted). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67. The Settlement Class Representatives' claims are typical of other Settlement Class Members' claims because they arise from the same Data Breach and involve the same overarching legal theories, including the theories that Capital One breached its contracts with Settlement Class Representatives and Settlement Class Members and failed in its common-law duty to protect their personal information. *See, e.g.*, *Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *12.

      **d.**    ***Adequacy of Representation***: The adequacy requirement is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As noted above, the Settlement Class Representatives do not have any interests antagonistic to other Settlement Class Members and have retained lawyers who the Court has already recognized are abundantly qualified and experienced, thus satisfying the adequacy requirement. Doc. 2219-4, ¶¶ 3-9, 50.

      **e.**    ***Predominance***: The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 Fed. App'x 299, 305 (4th Cir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 Fed. App'x 698, 701-02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 Fed. App'x 267, 273 (4th Cir. 2010)

(finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, common questions predominate because all claims arise out of a common course of conduct by Capital One and the only significant individual issues involve damages, which rarely present predominance problems. *See*, *e.g.*, *Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem*, 327 F.R.D. at 311-15. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312. Further, the Court previously found that Virginia law applies across all common law claims, e.g., Plaintiffs' claims for breach of contract (Doc. 879 at 9) and Plaintiffs' tort and quasi-contract claims (Doc. 1293), such that any "variations in state law will not predominate over the common questions." *Equifax*, 2020 WL 256132, at *13.

      **f.**     ***Superiority***: "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). Litigating the same claims of 98 million Americans through individual litigation would clearly be inefficient. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem*, 327 F.R.D. at 315-16.

      **2**     **<u>Plaintiffs' Counsel and Settlement Class Representatives.</u>**

The Court concludes that Norman E. Siegel of Stueve Siegel Hanson LLP, Karen Hanson Riebel of Lockridge Grindal Nauen, P.L.L.P., and John A. Yanchunis of Morgan & Morgan Complex Litigation Group have fairly and adequately represented the interests of the Settlement Class Members. Plaintiffs' Counsel have substantial experience in consumer class action litigation, and in particular data breach and privacy litigation, lead a significant effort to well develop every aspect of this case up through the certification and summary judgment stage, and were able to

negotiate a well-informed Settlement that provides meaningful relief to Plaintiffs and the Class. The Court previously appointed Mr. Siegel, Ms. Riebel, and Mr. Yanchunis as interim Class Counsel and now appoints them as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

The Court further concludes that Plaintiffs Brandon Hausauer, Carolyn Tada, Emily Behar, Gary Zielicke, Emily Gershen, Brandi Edmondson, John Spacek, and Sara Sharp have fairly and adequately represented the interests of the Settlement Class Members and now appoints them as Settlement Class Representatives.

### 3      Jurisdiction.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), and personal jurisdiction over the parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391.

### 4      Findings Concerning Article III Standing.

This Court must assure itself of the Plaintiffs' "standing under Article III," which "extends to court approval of proposed class action settlements." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (per curiam). As set forth in the Court's order granting preliminary approval of the Settlement, to have standing to sue in federal court a plaintiff must have "'(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Doc. 2220 at 4-5 (quoting *Hutton v. Nat'l Bd. Of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 619 (4th Cir. 2018) (citation omitted)).

The Court reaffirms its prior conclusion that it has subject matter jurisdiction to approve the Settlement. *See* Doc. 2220. The Court previously concluded it had subject matter jurisdiction to approve the Settlement because, among other reasons, each Plaintiff and Settlement Class Member is a party to an alleged contract under which Capital One agreed to provide safeguards

for their personal information, which Capital One allegedly breached, resulting in the theft of their personal information. Doc. 2220 at 5-6 (citing *L-3 Commc'ns Corp. v. Serco, Inc.*, 673 Fed. App'x 284, 289 (4th Cir. 2016) (the existence of an express or implied contract, and the asserted breach thereof, provides the plaintiff standing to sue)); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) ("[T]here is scant need for courts to pause over the standing inquiry" for a breach of contract claim, because it is "readily" apparent that "a party to a breached contract bears the kind of claim that he may press in court.").[6] Indeed, the Settlement Class is defined to include only individuals whose information was compromised in the Data Breach and who were allegedly parties to Capital One's contracts creating enforceable data security commitments that were violated. *See* Doc. 971 ¶¶ 96, 212-227; Doc. 1648 at 2-3 & n.4, 25-26 & nn.18-20; Doc. 1649 at 3-5; Doc. 879 at 41-42, 46-47. Thus, all Settlement Class Members have Article III standing.[7] The Court concludes it has subject matter jurisdiction to approve the Settlement and enter final judgment thereon.

### 5    <u>Findings Concerning Notice</u>.

The Court finds that the Notice Program has been implemented by the Settlement Administrator and the Parties in accordance with the requirements of the Settlement Agreement, and that such Notice Program, including the utilized forms of Notice, constitutes the best notice practicable under the circumstances and satisfies due process and the requirements of Rule 23 of

---

[6] Although Capital One disputes the merits of Plaintiffs' claims for breach of express and implied contract, a challenge to the merits does not impact the Court's subject matter jurisdiction. *See, e.g.*, *Am. Civ. Liberties Union v. Mote*, 423 F.3d 438, 441 n.1 (4th Cir. 2005). Moreover, because approval of a settlement agreement is "not a substantive adjudication of the underlying causes of action," *Marshall v. Nat'l Football League*, 787 F.3d 502, 511 n.4 (8th Cir. 2015), the Courtneed not definitively determine whether Plaintiffs and the Settlement Class Members have in fact proven their claims. As the Fifth Circuit observed, "it would make no practical sense for a court to require evidence of a party's claims when the parties themselves seek settlement under Rule 23(e)." *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014). Requiring class members "to prove their claims prior to settlement under Rule 23(e) would eliminate class settlement because there would be no need to settle a claim that was already proven." *Id.*

[7] Prior to reaching the Settlement now before the Court, the Parties argued extensively about the impact of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), on Plaintiffs' Article III standing. *Ramirez* did not address standing in the context of a class action settlement, let alone one that was reached prior to any ruling on class certification or summary judgment. Even if *Ramirez* requires Settlement Class Members to have standing, that requirement is satisfied here.

the Federal Rules of Civil Procedure. The Court finds that the Settlement Administrator and Parties have complied with the directives of the Order Granting Preliminary Approval of Class Action Settlement and Directing Notice of Proposed Settlement and the Court reaffirms its findings concerning notice as set forth in paragraph 9 thereof.

**6**        **Findings Concerning Claims Process**.

The Court finally approves the Claims Process as a fair and reasonable method to allocate the Settlement benefits among Settlement Class Members. The Court directs that the Settlement Administrator continue to effectuate the Claims Process according to the terms of the Settlement Agreement.

**7**        **Objections to the Settlement**.[8]

Only 4 Class Members submitted substantive objections, on the basis of which the Court finds strong support for the Settlement by Settlement Class Members and weighs strongly in favor of final approval.

As an initial matter, the Court notes that Putative class members Rosemary Burnham McDaniel (Doc. 2237) and Greg Zoccali (Doc. 2240) have opted-out of the Settlement and are therefore not part of the Settlement Class and have no standing to object.[9] The filing from Raymond John (Doc. 2239, filed under seal because of personal identifiers on documents), contains no discernable substantive objection to the Settlement.

With respect to the four remaining objections, which are more substantive in nature, the Court overrules the objections of Steven Helfand (Doc. 2238), Constance Pentz (Doc. 2241), Paul

---

[8] Three of the submitted objections relate, at least in part, to the requested attorneys' fees or service awards—those of Objectors Helfand, Higgitt, and Pentz (Docs. 2238, 2241, 2242), and will be considered in connection the pending Motion for an Award of Attorneys' Fees, Costs and Expenses, and for Plaintiff Service Awards, Docs. 2230, 2231.
[9] To the extent any of these filings are considered "objections" they are overruled. McDaniel believes that opting out should not be required, but that is an objection to a Federal Rule, not the Settlement. And both McDaniel and Zoccali believe that class actions benefit lawyers too much, but offer no substantive complaint regarding the Settlement before the Court.

Higgitt (Doc. 2242), and Daniel Komen (Doc. 2243).

    ***Objection to the Adequacy of Representative Plaintiffs and Class Counsel***. Objector Helfand's claim is that there exists a fundamental conflict of interest among three groups: "class members who have accrued damages, those still accruing damages, and those facing the prospect of future damage accrual." This objection has been rejected by multiple courts in analogous cases, and is rejected here. *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 974- 76 (8th Cir. 2018); *Equifax*, 2020 WL 256132, at *20-22; *Anthem*, 327 F.R.D. at 309-11; *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, 2016 WL 6902351, at *4 (N.D. Ga. 2016) (rejecting all objections, including objection that separate counsel was necessary to represent allegedly conflicting subclasses) (Doc. 237 at 39-40 (objection); Doc. 245 at 21-23 (reply in support of final approval)).

    Helfand's reliance on *Amchem*, 521 U.S. 591 and *Oritz v. Fibreboard* Corp., 527 U.S. 815 (1999), is misplaced. Unlike in this case, *Amchem* and *Ortiz* were massive personal injury "class action[s] prompted by the elephantine mass of asbestos cases" that "defie[d] customary judicial administration." *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 646-48 (8th Cir. 2012). In those cases, adequacy was not sufficiently protected within a single class because claimants who suffered diverse medical conditions as a result of asbestos exposure wanted to maximize the immediate payout, whereas healthy claimants had a strong countervailing interest in preserving funds in case they became ill in the future. These vast differences between groups of claimants required "caution [because] individual stakes are high and disparities among class members great." 521 U.S. at 625. Those concerns are simply not present in this consumer case where all Settlement Class Members allege the same injury from the compromise of their personal information. *See Equifax*, 2020 WL 256132, at *21.

    Moreover, there is no conflict between the two groups Helfand identifies, as there was in

*Amchem*, because of the nature of the harm caused by the Breach. Those who have already suffered losses stand just as likely to continue to suffer future losses by the misuse of their information as those who have not suffered any monetary losses to date. Thus, unlike in *Amchem*, everyone has an incentive to protect *all* Settlement Class Members against future harms. As the Eighth Circuit explained when confronted with identical objections in another data breach settlement: "Accordingly, the interests of the two subclasses here are more congruent than disparate, and there is no fundamental conflict requiring separate representation." *Target*, 892 F.3d at 976; *see also Anthem*, 327 F.R.D. at 309. The Settlement provides both compensation for current losses and protection against future losses, including identity theft insurance—all of which benefit *all* Settlement Class Members. Helfand's objection is overruled.

The additional grounds on which the Objectors object are also overruled. Higgitt objects to the value of the Settlement and the benefits conferred on the Class. For example, he claims that the $190 Million Settlement Fund is "absurdly low," is not "a sufficient punishment of the Companies for their negligent disregard for the safety of the customer data entrusted to their care," and that three years Restoration Services and Identity Defense Services is a "wholly inadequate" period of time. Doc. 2242 at 1-2.

However, "[i]n determining whether to approve a class action settlement, the issue is not whether everyone affected by the settlement is completely satisfied. Instead, the test is whether the settlement, as a whole, is a fair, adequate, and reasonable resolution of the class claims asserted." *Skochin v. Genworth Fin., Inc.*, 2020 WL 6532833, at *18 (E.D. Va. 2020). When a settlement results from hard-fought litigation and negotiation, objections regarding the amount of the settlement do not provide a justification for its rejection unless the amount secured is unfair, unreasonable, or inadequate. *Id.* Objections that the settlement fund is too small for the class size, or that a defendant should be required to pay more to punish and deter future bad behavior, while

understandable, do not take into account the risks and realities of litigation, and are not a basis for rejecting the settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.") (cleaned up). As argued above, and as this Court provisionally determined in its Preliminary Approval Order, the relief provided by the Settlement is "fair, reasonable, and adequate, in accordance with Rule 23(e) of the Federal Rules of Civil Procedure." Doc. 2220 at 2. This objection is overruled.

Higgitt also objects to the processes by which customers can interact with the Settlement Administrator to gain information about the Settlement. Doc. 2242 at 2. These objections contain factual errors. His first process-related objection is that: "No provision has been made for each member of the Class to discover what exact private information was stolen during this breach." *Id.* In fact, those Settlement Class Members whose Social Security numbers or linked bank account numbers were accessed during the Data Breach were specifically notified of that fact. Doc. 2219-6 at 23. With respect to the remainder of the data accessed in the Data Breach, which included "some combination of people's names addresses, zip codes/postal codes, phone numbers, email addresses, dates of birth, self-reported income, credit scores, credit limits, balances, payment history, contact data, and/or fragments of transaction data from a total of 23 days during 2016, 2017 and 2018," (Doc. 2242 at 2), it would be entirely impractical—if not impossible—to devise a system that would convey to Settlement Class Members the specific combination of accessed data for each of 98 million Settlement Class Members. Furthermore, Higgitt does not explain why that level of detail would be helpful to him or to other Settlement Class Members who did not have the most sensitive data (Social Security numbers and bank account numbers) accessed during the Data Breach. Where "the essence of the objection is that, to be fair and reasonable, the Settlement Agreement must be tailored to each individual[s] circumstance," the *Skochin* court overruled the

"proposal [as] simply unworkable." 2020 WL 6532833, at *22. The same principle applies here, and the objection is overruled.

Higgitt then objects that "it is not possible [to reach a human being] via the Settlement telephone numbers 855-604-1811." Doc. 2242 at 2. This is incorrect, as demonstrated by the Settlement Administrator's declaration:

> The toll-free telephone number was prominently displayed in all Notice documents. During normal business hours, callers also have the option to speak to a live operator. The automated phone system is available 24 hours per day, 7 days per week. As of August 24, 2022, there have been 197,094 calls to the toll-free telephone number representing 901,481 minutes of use, and service agents have handled 32,330 incoming calls representing 286,862 minutes of use and 2,843 outbound calls representing 13,857 minutes of use.

Azari Decl. ¶ 33. The Court overrules the factually incorrect objection that human agents were not available at the toll-free number.

Finally, objector Komen takes issue with the benefits conferred on the Class, although only on behalf of the subset of Settlement Class Members who are also "members of the Equifax data breach settlement class" Doc. 2243 at 1. He argues that the "three years of Identity Defense Services and Restoration Services proposed as compensation for the Capital One breach" has a "likely overlap" with the "four years of Experian's credit monitoring services" offered in *Equifax*. *Id.* He states that the services provided here "do not provide sufficient additional value to us, who have had our sensitive information leaked twice." (*Id.*)

Komen's objection does not present a valid objection to the value of the Settlement. He ignores the monetary relief the Settlement provides, which includes compensation for Out-of-Pocket Losses and Lost Time up to $25,000. Doc. 2219-2 ¶¶ 3, 4, 6. And he ignores Capital One's Business Practice commitments relating to cybersecurity. Finally, there is no impediment to receiving services under both settlements, which are provided by different companies and could prove useful to individuals who had their "sensitive information leaked twice." As with Higgitt,

Komen seeks "the Settlement Agreement [to be] tailored to each individual policyholder's circumstance," here including other settlement benefits they may receive in other, unrelated cases. This is "simply unworkable" in the class action context. *Skochin*, 2020 WL 6532833, at *22.[10] The objection is overruled.

**8      Findings Concerning the Fairness, Adequacy, and Reasonableness of the Settlement.**

The Court previously determined that the proposed Settlement meets the requirements of Rule 23(e) such that notice should issue. Doc. 2220 ¶ 2. The Court now determines that the Settlement is fair, reasonable, and adequate and should be approved in a class judgment.

The Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills*, 265 F.R.D. at 254. To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *Jiffy Lube*: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition

---

[10] *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *18 (N.D. Cal. July 22, 2020), *appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021), *and aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) ("[T]he credit monitoring in the instant case is not entirely duplicative of the credit monitoring in *Equifax*. First, the *Equifax* settlement contemplates credit monitoring provided by different credit monitoring services, and in a different package, than the one provided by AllClear ID in the instant case. Credit monitoring by multiple, independent entities still provides value to Settlement Class Members. Second, importantly, it is unclear whether the Equifax credit monitoring will ever overlap with the Credit Services provided by the instant Settlement in the first place because the Equifax settlement is currently pending appeal before the Eleventh Circuit. It is therefore entirely possible that the two years' worth of Credit Services offered in the instant case will expire before the Equifax credit monitoring becomes active. Third . . . it would be inequitable to retrospectively render this Settlement invalid based on the contents of a subsequent settlement reached in a different court in a different case.").

to the settlement." *Id.*

Evaluation under these factors confirms that the Settlement is fair, reasonable, and adequate. The Court finds that this Settlement reflects an outstanding result for the Class in a case with a significant level of risk. The Settlement provides significant monetary benefits to compensate consumers for out-of-pocket losses and attested time spent dealing with issues related to the alleged data breach and important commitments by Capital One as to its future data security practices. This relief compares very favorably to settlements in other data breach class actions. The Settlement satisfies all requirements of Rule 23(e)(2).

### a. The Settlement Class Representatives and Plaintiffs' Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A)).

The Court finds that the Settlement Class Representatives and Class Counsel have provided adequate representation to the Settlement Class by vigorously litigating this case in the face of stern opposition and denials of liability. Class Counsel negotiated a multi-faceted settlement that was well received by the Class, as evidenced by the minimal objections. Class Counsel's view that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class, supports approval of the Settlement.

In addition, the Court finds the Settlement Class Representatives have adequately represented the Settlement Class. Each of them provided documents, sworn interrogatories, and sat for their depositions—all of which was vital to Class Counsel's investigation and litigation of the class's claims. Furthermore, each of them has remained active in the case, communicating with Class Counsel during subsequent phases of the case, and, in particular, reviewing and approving the terms of the Settlement as being in the best interests of the Settlement Class.

### b. The Settlement was Negotiated at Arm's Length Class (Rule 23(e)(2)(B)).

The Court finds the Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the Parties' vigorous pursuit of fact and expert discovery and

briefing and argument of numerous legal issues; the length and difficulty of the negotiations; and the involvement of two experienced mediators, including Judge Brinkema across several mediation sessions.

         ***c.***        ***The Relief Provided for the Class is Adequate (Rule 23(e)(2)(C))***

The relief offered to Class Members in the proposed Settlement is adequate under the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits that are tailored to the relief sought through the litigation: recovery of up to $25,000 in Out-of-Pocket Losses that the Class Member believes are fairly traceable to the Data Breach; payment for Lost Time spent dealing with the Data Breach; at least three years of Identity Defense Services to help detect and remediate potential identity theft and fraud; and at least three years of Restoration Services including access to U.S.-based specialists in fraud resolution and identity restoration available to all Settlement Class Members without making a claim. Capital One's agreed Business Practice Changes are likewise an important benefit flowing to Settlement Class Members, whose sensitive personal information may still reside at Capital One.

Class Counsel, a group with substantial experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Doc. 2219-4 ¶¶ 3-10. The Court may rely upon such experienced counsel's judgment, which is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2)(C).

**Factor 1: The Costs, Risk, And Delay Of Trial And Appeal.** Plaintiffs faced significant risks and costs should they continue to litigate the case. First, there was a risk that Plaintiffs' claims would not have survived, or survived in full, on a class-wide basis after a ruling on the fully briefed and argued motion for class certification, motions for summary judgment, *Daubert* motions on damages methodologies and other issues, and challenges to the existence of a tort duty under Virginia law, among other motions. Second, if Plaintiffs had prevailed on their pending motion for

class certification and successfully defeated Defendants' pending motions thus proceeding to trial, Plaintiffs still would have faced significant risk, cost, and delay including likely interlocutory and post-judgment appeals.

In contrast to the risk, cost, and delay posed by the pending motions and possible appeals and trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class. It ensures that Settlement Class Members with valid claims for Out-of-Pocket Losses or Lost Time will receive guaranteed compensation now and provides Settlement Class Members with access to Identity Defense Services and Restoration Services, benefits that may not have been available at trial. It also requires injunctive relief that will help protect Class Member data from potential subsequent exposure. The substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

**Factor 2: The Method Of Distributing Relief Is Effective**. The proposed distribution process will be efficient and effective. The available relief was detailed in the Notice, which lays out clearly the benefits to which Settlement Class Members are entitled, including benefits provided regardless of whether a Settlement Class Member files a claim. The three categories of relief will be distributed as follows:

*First*, Settlement Class Members have made claims and may continue to make claims until September 30, 2022, online via the Settlement website or by mail for reimbursement for Out-of-Pocket Losses that the Settlement Class Members believe are fairly traceable to the Data Breach. Settlement Class Members need only submit a claim form on the website or by mail accompanied by reasonable documentation showing the claimed expenses to establish Out-of-Pocket Losses, or a self-certification of their Lost Time. *See* Doc. 2219-2 ¶ 8. If a claim is rejected for any reason, there is also a consumer-friendly appeals process whereby claimants will have the opportunity to cure any deficiencies in their submission or request an automatic appeal if the Settlement

Administrator determines a claim is deficient in whole or part. *Id.* ¶ 9.

*Second*, Settlement Class Members will be entitled to at least three years of Identity Defense Services provided by Pango. Settlement Class Members need only visit the Settlement website and sign-up via an online form in order to claim this benefit. And even if a Settlement Class Member does not initially claim Identity Defense Services, they can later enroll directly with Pango during the period of the service.

*Third*, for at least three years all Settlement Class Members will be entitled to utilize Restoration Services offered through Pango, regardless of whether they submit a claim for losses or enroll in Identity Defense Services. This coverage is a separate benefit and permits all Settlement Class Members to have access to U.S.-based fraud resolution specialists who can assist with important tasks such as placing fraud alerts with the credit bureaus, disputing inaccurate information on credit reports, scheduling calls with creditors and other service providers, and working with law enforcement and government agencies to dispute any fraudulent transactions or credit applications.

Because Settlement Class Members may make claims through a simple online form or by mail—and have the benefit of additional services for which they need take no action, including the Restoration Services detailed above as well as the business practices Capital One has agreed to— the method of distributing the relief is both efficient and effective, and the proposed Settlement is adequate under this factor.

**Factor 3: The Terms Relating To Attorneys' Fees Are Reasonable**. Class Counsel has requested a fee from the $190 million common fund based on the widely accepted "percentage of the fund" approach. (Doc. 2231). After robust notice directed at the approximately 98 million putative class members, only 3 objections relating to attorneys' fees are before the Court, as discussed above. Importantly, the Settlement Agreement is not conditioned upon the Court's

approval of the fee award or the requested service awards. Doc. 2219-1, §§ 18.3, 19.3. This factor supports approval of the Settlement.

      **Factor 4: Any Agreement Required To Be Identified Under Rule 23(e)(3).** The Parties previously submitted to the Court, *in camera*, the specific terms of the provision allowing Capital One to terminate the Settlement if more than a certain number of Class Members excluded themselves from the Settlement Class. These provisions have not been triggered, and thus do not affect the adequacy of the relief obtained here.

          *d.*      ***The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)).***

      The Settlement Class Members are treated equitably because they all have similar claims arising from the same data breach, and they all are treated the same under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the various benefits provided by the Settlement if they meet the requirements, including compensation for out-of-pocket losses that they believe are fairly traceable to the Data Breach, compensation for time spent responding to the Data Breach, and free Identity Defense Services. Moreover, all Settlement Class Members—even those who do not submit claims—may access Restoration Services and benefit from Capital One's Business Practice Commitments.

      **9**      **<u>Final Approval</u>.** The Court held a Final Approval Hearing on September 8, 2022. Following argument from the Parties, and after considering all objections, the Court concludes as follows: (a) this matter is certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (b) the Settlement is approved as fair, reasonable, and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) the Complaint in this MDL is dismissed with prejudice pursuant to the terms of the Settlement Agreement; and (d) Settlement Class Members, except those who timely and validly excluded themselves, are bound by the releases set forth in

the Settlement Agreement. The putative class members who timely and validly excluded themselves from the Settlement Class are listed in Exhibit A hereto. Further, because the Settlement is being reached as a compromise to resolve this litigation, including before a final determination of the merits of any issue in this case, none of the individuals reflected on Exhibit A may invoke the doctrines of *res judicata*, collateral estoppel, or any state law equivalents to those doctrines in connection with any further litigation against Defendants in connection with the Released Claims. The Parties are ordered to carry out the Settlement as provided in the Settlement Agreement.

10.     **Releases.** As of the Effective Date, the Releases set forth in Section 14 of the Settlement Agreement shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully and irrevocably released and forever discharged the Parties from all Released Claims. Doc. 2219-1 § 14.

11.     **Business Practice Changes.** Capital One shall implement and/or continue to use the Business Practice Changes described in Exhibit 2 to the Settlement Agreement on the terms set forth in § 5.1 and Exhibit 2 to the Settlement Agreement.

12.     **Continuing Jurisdiction.** The Court hereby dismisses this Action with prejudice except the Court retains jurisdiction over this action and the Parties, attorneys and Settlement Class Members for all matters relating to this Action, including (without limitation) the administration, interpretation, scope, effectuation or enforcement of the Settlement Agreement and this Order. Without limiting the generality of the foregoing, any dispute concerning the Settlement Agreement, including, but not limited to, any suit, action, arbitration or other proceeding by a Settlement Class Member in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, shall constitute a matter relating to this Order. Nothing in this Order shall preclude any action to enforce

the terms of the Settlement Agreement.

      **B**      <u>**Dismissal.**</u> This Action is hereby dismissed on the merits, in its entirety, with prejudice and without costs, save for any individual claims brought by putative class members who timely and validly excluded themselves from the Settlement Class. The Settlement Class Representatives and Settlement Class Members are hereby permanently barred and enjoined (including during the pendency of any appeal taken from this Order) from commencing, pursuing, maintaining, enforcing, or prosecuting, either directly or indirectly, any Released Claims in any judicial, administrative, arbitral or other forum. This permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement, this Order, and this Court's authority to effectuate the Settlement Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments. The Court finds, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay, and directs the Clerk to enter final judgment.

      **IT IS SO ORDERED:**

                                                             _____
                                                          Anthony J. Trenga
                                                          United States District Judge

Alexandria, Virginia
September 13, 2022